1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SHAMSHER SINGH,                          No.  1:22-cv-00502-ADA-CDB

12                  Plaintiff,

13        v.                                  ORDER GRANTING DEFENDANTS'
                                              MOTION FOR SUMMARY JUDGMENT
14   MERRICK B. GARLAND, et al.,
                                              (ECF No. 17)
15                  Defendants.

16

17        This matter is before the Court on Defendants Merrick B. Garland, Alejandro Mayorkas,

18   and Kathy A. Baran's motion for dismissal and summary judgment.  (ECF No. 17.)  The Court

19   converts the motion into one for summary judgment.[1]  Due to the emergency posed by the

20   COVID-19 pandemic, the motion was taken under submission based on the papers.  (ECF No.

21   18.)  As explained below, the Court will grant Defendants' motion for summary judgment.

22

23   [1] "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not
     excluded by the court, the motion must be [converted to] one for summary judgment under Rule
24   56." Fed. R. Civ. P. 12(d); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Parrino v.
     FHP, Inc*., 146 F.3d 699, 706 fn. 4 (9th Cir. 1998) (*Parrino*).  "There is no notice requirement for
25   the conversion, but the court must give the parties a reasonable opportunity to present [pertinent]
     material." *In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998).  "A party is 'fairly appraised' that
26   the court will in fact be deciding a summary judgement motion if that party submits matters
     outside the pleadings to the judge and invites consideration of them." *Id*.  "Where[] an attached
27   document is integral to the plaintiff's claims and its authenticity is not disputed, the plaintiff
     'obviously is on notice of the contents of the document . . .'" *Parrino*, 146 F.3d at 706 fn. 4.
28

                                              1

1                                        **PROCEDURAL HISTORY**

2           Plaintiff Shamsher Singh filed a Complaint pursuant to 28 U.S.C. § 1331 on April 27,

3 2022, seeking judicial review of a United States Citizenship & Immigration Services' (USCIS)

4 decision denying his I-130 Petition for Alien Relative (Petition), governed by Section 203 of the

5 Immigration and Nationality Act (INA).  (ECF No. 1.)  Plaintiff alleges the agency's decision is:

6 (1) "arbitrary and capricious" under the Administrative Procedure Act (APA); (2) violative of

7 Section 204.2 of Title 8 of the Code of Federal Regulations; and (3) violative of Plaintiff's

8 procedural due process rights.  (*Id.*)  The Court construes Plaintiff's fourth and fifth actions as

9 prayers for relief. [2]  Plaintiff does not demand a jury trial.  (*Id.*)  Defendants filed this motion on

10 August 12, 2022.  (ECF No. 17.)  Following an extension, Plaintiff opposed September 11, 2022

11 (ECF No. 23), and Defendants replied September 20, 2022 (ECF No. 25).

12                                                     **FACTS**

13           Plaintiff's Complaint and Defendants' exhibit—the certified administrative record

14 concerning Plaintiff's Petition—comprise the facts (ECF Nos. 1, 16):  Plaintiff is a 75-year-old

15 native of India and naturalized United States citizen.  (ECF No. 1 at 5.)  Harvinder Singh is a 48-

16 year-old native and citizen of India, born in October of 1974.  (*Id.*)  Plaintiff alleges Harvinder is

17 his biological son.  (*Id.*)  On March 21, 2012, Plaintiff filed his Petition with USCIS on behalf of

18 Harvinder as his married son.  (*Id.*)  Plaintiff submitted his Certificate of Naturalization (ECF No.

19 16 at 190), his United States passport (*id.* at 191), and three untranslated documents (*id.* at 192-

20 94) with his Petition.  Plaintiff filed his Petition without legal counsel.  (ECF No. 1 at 5.)[3]

---

21 [2] Plaintiff alleges a fourth and fifth action for injunctive and declaratory relief, respectively.
22 (ECF No. 1 at 11-12.)  Defendants argue these actions "are not independent cognizable claims but, instead, prayers for relief that 'form[] no part of the cause of action or claim.'"  (ECF No. 17
23 at 8, fn. 4.)  Defendants are correct.  *See Bayer v. Neiman Marcus Grp., Inc*., 861 F.3d 853, 864 (9th Cir. 2017) (citing *Mertens v. Hewitt Assocs*., 508 U.S. 248, 255 (1993) ["Injunctive relief
24 constitutes a traditional equitable remedy"]); *see also Brownell v. Ketcham Wire & Mfg. Co*., 211 F.2d 121, 128 (9th Cir. 1954) ["the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, is not a
25 consent of the United States to be sued, and merely grants an additional remedy in cases where
26 jurisdiction already exists in the court"].

27 [3] David Sturman, Plaintiff's former counsel, alleged Plaintiff did not have "the assistance of a professional" when filling out his Petition and was assisted by his grandson, Herjot Gill.  (ECF
28 No. 16 at 141.)

On December 1, 2017, USCIS issued a Request for Evidence (RFE)[4] in response to Plaintiff's Petition, instructing him to submit evidence proving his biological, parent-child relationship with Harvinder.  (ECF No. 1 at 5; ECF No. 16 at 182.)  The RFE instructed Plaintiff to submit Harvinder's birth certificate; and, if the birth certificate lacked a registration date or if registration had been delayed by more than one year, the RFE requested secondary evidence, such as: "(1) Medical records (immunization record); (2) Church records (baptismal certificate); (3) School records (report cards, transcripts); (4) Insurance records; (5) Employment records; (6) Financial records (tax returns, money orders); (7) Residence records showing that the parent and child lived together; (8) Census or tribal records; (9) Government records (passports, identification documents); (10) Family photographs; or (11) Correspondence with envelopes showing dates and both the parent's and child's names."  (*Id*.)

The RFE informed Plaintiff he could submit two or more affidavits by persons with direct personal knowledge of Harvinder's birth; however, without any of the above secondary evidence, those affidavits "[would] not be accorded any weight, unless [Plaintiff] established the above secondary evidence was unavailable."  (ECF No. 16 at 182.)[5]  The RFE instructed Plaintiff that he and Harvinder "may undergo voluntary DNA testing" according to specified procedures (*id*. at 184; ECF No. 1 at 5-6) and underscored that "[p]articipating in DNA testing does not guarantee approval of the petition" (ECF No. 16 at 184).  The RFE explained that if "the laboratory is unable to mail the result to [its] office within the 84-day period," Plaintiff must "submit evidence from the laboratory to show DNA testing has been *initiated*."  (*Id*. (emphasis added).)  The RFE also instructed Plaintiff to submit evidence that Harvinder was born in wedlock or legitimated by marriage by "submit[ting] the marriage certificate of the genetic parents of the child" showing they were married before Harvinder turned 18.  (ECF No. 1 at 6; ECF No. 16 at 184-86.)

---

[4] Plaintiff's claims rely on references to the RFE throughout his pleading; thus, the RFE is incorporated by reference.  *See Parrino*, 146 F.3d at 705-06.  Further, Defendants' submitted the RFE, among other documents, as an exhibit to their motion for summary judgment.  (ECF No. 16.)  Plaintiff did not object to Defendants' filings.  (ECF No. 23.)

[5] Plaintiff frames the ability to submit affidavits as allowable "only if . . . secondary evidence was unavailable."  (ECF No. 1 at 5.)  This is inaccurate—Plaintiff must establish unavailability.

If Harvinder was neither born in wedlock nor legitimated by marriage, the RFE instructed Plaintiff to submit evidence of a "bona fide father/child relationship" before Harvinder turned 21.[6]  (ECF No. 1 at 6; ECF No. 16 at 184.)  Plaintiff could establish this relationship with documentary evidence of "more than a mere tie by blood," "emotional and/or financial ties," or his "genuine concern and interest . . . for [Harvinder]'s support, instruction and welfare" as a child.  (ECF No. 16 at 184-85.)  The RFE instructed Plaintiff that evidence may consist of: (1) money orders showing his financial support of Harvinder; (2) income tax returns (properly filed) claiming Harvinder as a dependent; (3) insurance forms listing the child as a beneficiary; (4) medical reports or bills indicating the relationship; (5) school records; (6) correspondence between the parties; and (7) notarized affidavits of knowledgeable parties.  (*Id*. at 185.)  If Plaintiff submitted affidavits, he must also submit a sworn statement explaining "why the usual supporting documents" were unavailable.  (*Id*.)  Further, affiants' attestations should include, "for example, the date and place of a birth (*including both parents' names*)[and] the date and place of a marriage."  (*Id*. (emphasis added).)  The RFE required Plaintiff to submit his documentary evidence by February 26, 2018.  (*Id*. at 182.)

On January 3, 2018, USCIS filed Plaintiff's responsive evidence.  (ECF No. 1 at 6; ECF No. 16 at 168.)  Plaintiff submitted:  Harvinder's High School transcripts from June 1990 and June 1993, listing Plaintiff as Harvinder's father (ECF No. 16 at 178-79); a notarized affidavit from Jaswant Singh, son of Bhag Singh, attesting that Harvinder is his nephew and Plaintiff's son (*id*. at 175-76); a notarized affidavit from Ajmer Singh, son of Phumman Singh, attesting that Harvinder "is the son of [Ajmer's] Father's sister" and Plaintiff's son (*id*.); and Harvinder's birth certificate, registered in August of 1993 and 19 years after Harvinder's birth, and listing Plaintiff as Harvinder's father only (*id*. at 173-74).[7]  None of Plaintiff's submitted documentation included Harvinder's mother's name.  (*Id*.)

---

[6] The RFE acknowledged that the legitimation laws of the child's place of birth had not eliminated the distinctions between children born in or out of wedlock but directed Plaintiff to provide proof if otherwise.  (ECF No. 16 at 185.)

[7] Plaintiff submitted originals with a verified English translation.  (ECF No. 16 at 173-79.)

On February 21, 2018, USCIS denied Plaintiff's Petition because of "inadmissibility issues" under Section 101(b) of the INA (ECF No. 16 at 187-89); an unknown individual also wrote "no name [of] wife" near the section of the form requiring information for "Name(s) of Prior Husband(s)/Wive(s)" (*id*. at 204).  On February 23, 2018, USCIS issued a written decision; it reasoned that Plaintiff's documentary evidence initially submitted with his Petition and subsequently submitted in response to the RFE was insufficient to establish that Harvinder qualified as a "child" under Section 101(b) of the INA.  (ECF No. 1 at 6; ECF No. 16 at 200-03.)  Under the Act, a "child" must be "born in wedlock"; "legitimated under the law of the child's [or father's] residence or domicile . . . if such legitimation takes place before the child reaches [18] years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation"; or "born out of wedlock, by, through whom, or on whose behalf a status, privilege, or benefit is sought by virtue of the relationship of the child to its . . . natural father if [he] has or had a bona fide parent-child relationship with the person."  (*Id*. at 200); *see* 8 U.S.C. § 1101.

The decision explained why Plaintiff's submitted evidence was insufficient.  (ECF No. 16 at 201-02.)  It first articulated the applicable rule:  "[p]rimary evidence of the relationship should consist of the beneficiary's birth certificate and the parents' marriage certificate or other evidence of legitimation issued by civil authorities."  (*Id*. at 201); *see* 8 C.F.R. § 204.2(d)(2)(ii).  Specifically, for a father to establish his child was born in wedlock, he must submit "the birth certificate of the child [and] a marriage certificate of the parents . . . ."  (*Id*. at 201); *see* 8 C.F.R. § 204.2(d)(2)(i).  If not born in wedlock, to establish his child was legitimated, a father must show "the marriage of [their] natural parents . . . [took] place while the child was under [18]."  (*Id*.); *see* 8 C.F.R. § 204.2(d)(2)(ii).  Otherwise, "[i]f the legitimation is based on the laws of the country or state of the child's residence or domicile, the law must have taken effect before the child's eighteenth birthday.  If [based on] the father's residence or domicile, the father must have resided—while the child was under eighteen years of age—in the country or state under whose laws the child has been legitimated."  *Id*.

First, the decision stated that Plaintiff did not submit a marriage certificate to establish that Harvinder was born in wedlock (ECF No. 16 at 201; ECF No. 1 at 6), and, second, that the other

1   evidence Plaintiff submitted did not establish that Harvinder had been legitimated "under the laws

2   of the father's domicile, or under the laws of the child's domicile."  (*Id.*)  Finally, the decision

3   explained the school documents were insufficient because they were not contemporaneous with

4   Harvinder's birth and did not establish the requisite biological relationship.  (*Id.*)

5        USCIS was unable to review the marriage certificate as Plaintiff had not yet submitted it;

6   thus, USCIS iterated the applicable rule for children born out of wedlock and never legitimated

7   by marriage.  (ECF No. 16 at 201-02.)  In that case a father must show "he is the natural father

8   and that a bona fide parent-child relationship was established when the child . . . was unmarried

9   and under [21]."  (*Id.*); *see* 8 C.F.R. § 204.2(d)(2)(iii).  In addition to the evidence required to

10  show that Plaintiff is Harvinder's natural father, a "bona fide parent-child" relationship "will be

11  deemed to exist . . . where the father demonstrates or has demonstrated an active concern for the

12  child's support, instruction, and general welfare" as "[e]vidence of a parent/child relationship

13  should establish more than merely a biological relationship."  *Id.*  "The most persuasive evidence

14  for establishing a bona fide parent/child relationship and financial responsibility by the father is

15  documentary evidence which was contemporaneous with the events in question."  *Id.*

16       The decision stated that Plaintiff did not submit sufficient evidence to show that a bona

17  fide father-child relationship was established prior to the time Harvinder reached age 21 or

18  married.  (ECF No. 1 at 6; ECF No. 16 at 202.)  As such, the decision found that Plaintiff did not

19  submit sufficient documentary evidence to establish eligibility for the benefit sought and noted

20  any appeal must be within 30 days of the date of the notice of the decision; it did not specifically

21  address the affidavits submitted by Jaswant and Ajmer.  (ECF No. 16 at 202.)

22       On March 22, 2018, Plaintiff, through his former counsel David Sturman, filed a timely

23  Notice of Appeal of USCIS's decision with the Board of Immigration Appeals (BIA).  (ECF No.

24  1 at 7; ECF No. 16 at 199.)  On appeal to the BIA, Mr. Sturman asserted that Harvinder "is the

25  biological son of [Plaintiff] and Harjeet Kaur."  (ECF No. 16 at 140.)  Mr. Sturman argued the

26  RFE did not identify any deficiencies with the initial documentation other than stating Plaintiff

27  submitted documents without an English translation; it, instead, "provided a lengthy recitation of

28  the regulations enumerating all the different types of evidence that can be used to establish a

1   parent-child relationship." (*Id*.) Mr. Sturman argued that the RFE's "scattergun approach" "was

2   procedurally defective"[8] by not informing Plaintiff what specific evidence was needed to correct

3   the deficiencies in the Petition. (ECF No. 1 at 7; ECF No. 16 at 148.)

4         Mr. Sturman asserted Plaintiff had submitted a copy of Plaintiff's marriage certificate in

5   response to the RFE, proving that Harvinder was born in wedlock. (ECF No. 16 at 142.)[9] The

6   marriage certificate, Mr. Sturman argued, was overlooked by USCIS when it denied Plaintiff's

7   Petition and attached the marriage certificate as an exhibit to the appeal brief. (*Id*. at 144.)[10] The

8   marriage certificate, included in Defendants' exhibits, shows "Harjeet Kaur, daughter of S. Jageer

9   Singh" was married to Plaintiff in November of 1966 "under the provisions of U.P. Hindu

10  Marriage Registration Act." (*Id*. at 89-90.) The marriage certificate states Plaintiff is the "son of

11  Sardar Bhag Singh" as indicated on the affidavit submitted by Jaswant Singh, or, Plaintiff's

12  brother. (*Id*.) Mr. Sturman argued that Plaintiff's burden of proof was satisfied when

13  Harvinder's birth certificate and other evidence were considered. (*Id*.) Thus, Mr. Sturman

14  argues, Plaintiff was not required to show a bona fide parent-child relationship nor to undergo

15  DNA testing since he had submitted sufficient evidence to show Harvinder was born in wedlock.

16  (*Id*. at 144-47.) Alternatively, Mr. Sturman argued Plaintiff was not given a "procedurally

17  adequate opportunity to submit additional evidence." (*Id*. at 142.) Mr. Sturman argued that,

18  while it was in its discretion to do so, "rather than issue a Notice of Intent to Deny addressing the

19  specific deficiencies of [Plaintiff]'s filing, [USCIS] simply denied the petition." (*Id*.)

20        On May 13, 2019, the BIA denied Plaintiff's administrative appeal. (ECF No. 1 at 7; ECF

21  No. 16 at 136.) The BIA concluded that the RFE provided sufficient guidance to Plaintiff to meet

22  his evidentiary burden by identifying the various categories of relationships and examples of the

23  _____

24  [8] Plaintiff characterizes this as a due process violation argument. (ECF No. 1 at 7.)

25  [9] Mr. Sturman did not address that Harvinder's birth certificate does not list Harvinder's mother's
    name (ECF No. 16 at 139-53); therefore, it was not possible for USCIS to ascertain who

26  Harvinder's mother was from Plaintiff's Petition—let alone whether she was Harjeet Kaur.

27  [10] Mr. Sturman argued the marriage certificate was issued by the government of India on
    December 18, 2017, prior to Plaintiff's response on January 3, 2018. (ECF No. 16 at 144.) The

28  marriage certificate provided does not reflect that date. (*Id*. at 89-90.)

1    type of evidence required to establish each type of relationship.  (ECF No. 1 at 7.)  The BIA

2    reviewed Plaintiff's evidence submitted on appeal—the marriage certificate—stating, "even if

3    submitted in response to the RFE, a review of the marriage certificate provided on appeal shows

4    that the document would not have helped [Plaintiff] meet his burden of proof.  Contrary to his

5    claims on appeal, [Plaintiff] did not identify his wife on the visa petition—that name was

6    blank.[11]  Further, neither [Harvinder]'s birth certificate nor any other document submitted in

7    support of the visa petition identifies [Harvinder]'s mother.  While the marriage certificate shows

8    that [Plaintiff] was married, it does not establish the identity of [Harvinder]'s mother."  (ECF No.

9    1 at 7; ECF No. 16 at 137.)  The BIA rejected Plaintiff's argument USCIS required Plaintiff to

10    undergo DNA testing to prove his biological relationship with Harvinder.  (*Id*.)  DNA evidence,

11    the BIA concluded, was optional and voluntary.  (*Id*.)  Finally, the BIA rejected Plaintiff's

12    argument that the delayed issuance of the RFE violated his right to due process.  (ECF No. 1 at 8;

13    ECF No. 16 at 137.)  The BIA stated that there was nothing in the record that suggested that the

14    delay prevented Plaintiff from presenting evidence to USCIS, and on appeal Plaintiff had not

15    presented or identified the evidence he would have submitted in support of his Petition.  (*Id*.)

16          On July 31, 2019, Plaintiff filed a motion to reconsider requesting a remand to USCIS to

17    allow him to submit DNA evidence to establish his biological relationship to Harvinder.[12]  (ECF

18    No. 1 at 8; ECF No. 16 at 125-34.)  Plaintiff argued that the BIA misunderstood his arguments.

19    (*Id*.)  He argued, in response to the BIA's statement he did not identify future evidence, that the

20    federal regulation, 8 C.F.R. § 204.2(d)(2)(vi), could require DNA testing only after other

---

21    [11] There is no space on the I-130 Petition for Plaintiff to have filled in his current wife's name.

22    The only space available is for *prior* spouses.  *See* ECF No. 16 at 204-05.

23    [12] Plaintiff's counsel timely submitted the motion to reconsider but to the wrong office.  (ECF No.

24    16 at 123.)  It was dated June 1, 2019, and received by the incorrect office on July 9, 2019.  (*Id*.)
The office sent notice to Plaintiff on July 15, 2019.  (*Id*.)  It was submitted for the second time on

25    July 29, 2019, noting the motion was "not an appeal, [but] a Motion to Reconsider."  (*Id*. at 117.)
In the second submission, Plaintiff noted he submitted it to both USCIS and BIA and both stated

26    it was the incorrect office.  (*Id*.)  Plaintiff submitted to the California Service Center (CSC) and
the motion was accepted on August 14, 2019.  (*Id*. at 110.)  The CSC submitted an opposition to

27    Plaintiff's motion on October 30, 2019.  (*Id*. at 111.)  Plaintiff's motion and the CSC's opposition
were forwarded to the BIA on February 10, 2020.  (*Id*. at 112.)  The BIA acknowledged receipt of

28    the "appeal" on March 6, 2020.  (*Id*. at 107.)

evidence proved inconclusive. (*Id.*) Thus, the option in the RFE to submit DNA evidence was premature because USCIS had not yet determined that other forms of evidence presented did not conclusively prove Plaintiff's biological relationship to Beneficiary. (*Id.*) Plaintiff argued in his motion to reconsider that his due process claim on appeal was not based on USCIS's delay in issuing the RFE; rather, it was based on the "RFE's scattergun approach" of listing the many different types of evidence that could be submitted in support of the I-130 petition, which failed to provide him sufficient guidance on how to respond to the RFE. (ECF No. 1 at 8; ECF No. 16 at 132.) Plaintiff requested that he be given the opportunity to submit DNA evidence to establish his biological relationship to Harvinder. (*Id.*)

On March 23, 2021, the BIA denied Plaintiff's motion to reconsider because the regulations precluded reopening proceedings for consideration of evidence that was not new and was previously available and discoverable at the time of the prior adjudication. (ECF No. 1 at 8; ECF No. 16 at 104-06.) The BIA stated that Plaintiff was previously afforded the opportunity to submit DNA evidence but declined to pursue it and that the regulation did not require USCIS to provide Plaintiff an opportunity to submit to DNA testing after other evidence was considered and determined to be insufficient. (*Id.*) The BIA also rejected Plaintiff's due process arguments with respect to the lack of specificity within the RFE. (ECF No. 1 at 9; ECF No. 16 at 104-06.) The BIA explained that a more-specific RFE could not have been issued because the evidence submitted with the Petition was insufficient to establish Plaintiff's relationship to Harvinder. (*Id.*) The BIA concluded USCIS properly outlined the need to first establish a biological relationship between Plaintiff and Harvinder and the types of evidence necessary to do so. (*Id.*)

Plaintiff asserts that USCIS violated 8 C.F.R. § 204.2(d)(2)(vi) by not giving him the opportunity to submit DNA evidence after other evidence proved inconclusive in establishing a parent-child relationship, as required. (ECF No. 1 at 9.) Plaintiff also argues USCIS did not give him reasonably specific instructions on how to respond to the RFE it issued, thereby, violating his due process rights as a *pro se* petitioner. (*Id.*) Plaintiff states a new petition would require a new priority date, delaying processing "by at least 14 years." (*Id.*) Plaintiff argues the extended waiting time would present "a significant hardship" to him and his family. (*Id.*)

1

**LEGAL STANDARD**

2

**Motion for Summary Judgment**

3      "In the context of a case where a party is seeking review of an administrative decision,

4  '[a] district court is not required to resolve any factual issues when reviewing administrative

5  proceedings.'  'Instead, the district court's function is to determine whether or not as a matter of

6  law the evidence in the administrative record permitted the agency to make the decision it did.'

7  Accordingly, summary judgment 'is an appropriate mechanism for deciding the legal question of

8  whether the agency could reasonably have found the facts as it did.'"  *Naiker v. United States*

9  *Citizenship & Immigr. Servs*., 352 F. Supp. 3d 1067, 1072 (W.D. Wash. 2018) (citations omitted)

10  (*Naiker*); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric*., 18 F.3d 1468, 1471-72 (9th Cir.

11  1994) (*Nw. Motorcycle*).  Specifically, "[s]ummary judgment is an appropriate remedy in an

12  action of this type for judicial review of the denial of a preference visa."  *Tang v. Dist. Dir. of U.*

13  *S. Immigr. & Naturalization Serv*., 298 F. Supp. 413, 417 (C.D. Cal. 1969), aff'd, 433 F.2d 1311

14  (9th Cir. 1970).  "In APA reviews, the court's review is based on the administrative record."

15  *Naiker*, 352 F. Supp. 3d at 1072.

16

**DISCUSSION**

17

**A.  The BIA Decision is not "Arbitrary and Capricious" under the APA.**

18

**i.  Standard of Review**

19      Under the APA, a petitioner may seek judicial review of a USCIS decision on a Form I-

20  130 petition in the United States District Court.  5 U.S.C. §§ 701 et seq.  "[A] court may set aside

21  an agency's final action if the action was 'arbitrary, capricious, an abuse of discretion, or

22  otherwise not in accordance with law.'  This is a 'highly deferential' standard under which there

23  is a presumption that the agency's action is valid 'if a reasonable basis exists for its decision.' . . .

24  [A] reviewing court may also 'hold unlawful and set aside agency action, findings, and

25  conclusions' that are 'without observance of procedure required by law,' or 'in excess of statutory

26  jurisdiction, authority, or limitations, or short of statutory right' . . . [T]he district court cannot

27  'substitute [its] judgment for that of the agency.'"  *Amar v. Mayorkas*, No.

28  CV216752CBMADSX, 2022 WL 18228254, at *2-3 (C.D. Cal. Dec. 19, 2022) (citations

1   omitted) (*Amar*).  "The APA limits the scope of judicial review to the administrative record,"

2   directing the Court to "'review the whole record or those parts of it cited by a party.'"  5 U.S.C. §

3   706; *Amar*, 2022 WL 18228254, at *2; *see Portland Audubon Soc. v. Endangered Species*

4   *Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) ["'The whole record' includes everything that was

5   before the agency pertaining to the merits of its decision'"]; *Camp v. Pitts*, 411 U.S. 138, 142

6   (1973).  Upon determining if the evidence in the administrative record permitted the agency to

7   make the decision it did, the Court will not disturb an agency's final decision if it "examine[d] the

8   relevant data and articulate[d] a satisfactory explanation for its action including a 'rational

9   connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of U.S.,*

10  *Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

11       Plaintiff argues the BIA's decisions affirming the USCIS's denial of his Petition and

12  denying his motion to reconsider were arbitrary and capricious under the APA.  The BIA did not

13  "expressly adopt" the USCIS decision; it conducted a de novo review; thus, this Court reviews

14  the BIA decision, not the underlying USCIS decision.  *Stoll v. United States Citizenship &*

15  *Immigr. Servs.*, No. 1:20-CV-666-BAM, 2021 WL 780309, at *10 (E.D. Cal. Mar. 1, 2021)

16  (citing *Salazar-Paucar v. I.N.S.*, 281 F.3d 1069, 1073 (9th Cir. 2002); *Alaelua v. I.N.S.*, 45 F.3d

17  1379, 1382 (9th Cir. 1995)).

18                    **ii.   The BIA's decision was not arbitrary and capricious**

19       Plaintiff argues "[USCIS] violated . . . 8 C.F.R. § 204.2(d)(2)(vi) by not giving [him] the

20  opportunity to submit DNA evidence after the other evidence proved inconclusive in establishing

21  the parent-child relationship" and that "[t]he regulation required DNA testing if other forms of

22  evidence had been found to be inconclusive."  (ECF No. 1 at 9; ECF No. 23 at 9.)  Defendants

23  argue that Plaintiff is incorrect because: (1) the cited regulation "has nothing to do with the DNA

24  testing" and, consequently, "DNA testing is completely voluntary"; (2) the irrelevant cited

25  regulation is an authorizing statute that "vests discretionary [power] with USCIS to require [blood

26  antigen testing]; it creates no mandatory obligation"; and, (3) "USCIS did, in fact, afford Plaintiff

27  a second bite at the apple to submit DNA testing after the agency reviewed Plaintiff's initial

28  submissions and found them deficient."  (ECF No. 17 at 9-11.)

1

**1.   The BIA appeal and motion to reconsider**

2        The BIA summarized Plaintiff's arguments on appeal as follows:  "[P]etitioner argues that

3   the RFE improperly demanded that [he] undergo DNA testing with [Harvinder] before evaluating

4   the documentary evidence submitted."  (ECF No. 16 at 137.)  The BIA concluded "[P]etitioner's

5   assertion . . . [was] inaccurate.  The submission of DNA evidence was clearly listed as optional

6   and voluntary."  (*Id*.)  In his motion for reconsideration, Plaintiff argued the BIA "oversimplified,

7   mischaracterized, or misunderstood much of [his] arguments on appeal."  (*Id*. at 130.)  Plaintiff

8   posits he did not argue that the RFE improperly demanded he submit DNA testing[13] and

9   "invit[ed] the BIA to revisit this portion of [his] prior brief."  (*Id*.)  Instead, Plaintiff argues, "[he]

10   had no problem with the RFE's request for DNA[—, r]ather, [he] was essentially arguing that the

11   RFE's request for DNA was premature and that [he] should have been provided another

12   opportunity to submit DNA in light of the premature timing."  (*Id*.)

13        Plaintiff argues, citing § 8 C.F.R. 204.2(d)(2)(vi), "[t]he regulations implicitly provide that

14   a petitioner should be provided an opportunity to submit DNA testing ***once* the Service has**

15   **concluded that the primary and secondary evidence is insufficient**."  (ECF No. 16 at 131

16   (emphasis in cited material).)  That statute states:  "The director may require that a specific Blood

17   Group Antigen Test be conducted of the beneficiary and the beneficiary's father and mother.  In

18   general, **blood tests will be required ONLY AFTER other forms of evidence have proven**

19   **inconclusive**."  (*Id*. (emphasis in cited material).)  Plaintiff argued "the RFE's optional request

20   for DNA was premature in that [USCIS] ha[d] not yet determined that the 'other forms of

21   evidence were inconclusive.'"  (*Id*.)  Plaintiff asserted "he should have been allowed to wait for

22   [USCIS] to consider the evidence and ***then*** been provided an opportunity to submit DNA testing

23   'after other forms of evidence have proven inconclusive.'"  (*Id*. (emphasis in cited material).)

24        In its decision on Plaintiff's motion for reconsideration, the BIA "concluded that there is no

25   merit in [Plaintiff]'s arguments."  (ECF No. 16 at 105.)  Citing § 8 C.F.R. §§103.2(b)(8)(i) and (ii),

26

27   [13] Plaintiff, in his brief on appeal, argued "the clear and express language of the RFE demanded
     that [he] initiate [DNA] testing immediately, which in effect converts this option into a
28   requirement" stating, "[t]his violates the regulations."  (ECF No. 16 at 33.)

the BIA stated, "the decision whether to request additional evidence in support of a visa petition is left to the discretion of the Director; a visa petition may be denied without issuing an RFE . . . The petitioner has no right to dictate what evidence may be requested, and in what order it must be considered."  (*Id*.)  Further, the BIA determined "[t]he petitioner's reliance on [8 C.F.R. § 204.2(d)(2)(vi)] providing that the Director may require blood [tests] only after other forms of evidence have proved inconclusive is misplaced."  (*Id*.)  Instead, "the regulation simply shields a petitioner from being required to submit such evidence initially when there may be other less intrusive or invasive evidence sufficient to prove a claimed relationship.  That is why the RFE emphasized that undergoing DNA testing was purely voluntary (RFE at 3).  The regulation does not require the Director to provide the Petitioner an opportunity to submit to DNA testing after all other evidence is considered and determined to be insufficient."  (*Id*.)

### 2.   The BIA held a reasonable basis for its decision.

The BIA did not abuse its discretion when it denied Plaintiff's motion to reconsider or when it affirmed the USCIS decision on appeal; its decision was not arbitrary and capricious.

The BIA determined what Plaintiff sought was not the function of the statute he cited and properly arrived at this determination through analyzing the plain language of the relevant statute.  *See Nw. Motorcycle*, 18 F.3d at 1478 ["There must be a rational connection between the facts found and the choices [the agency] made"].  "'The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself.  In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'"  *United States v. Ron Pair Enterprises, Inc*., 489 U.S. 235, 241 (1989) (citations omitted).

First, the BIA properly determined that the decision to request additional evidence is left to the director's discretion under 8 C.F.R. § 103.2(b)(8)(ii), which states:  "USCIS in its discretion may deny the benefit request for lack of initial evidence or for ineligibility or request that the missing initial evidence be submitted within a specified period of time as determined by USCIS."  (ECF No. 16 at 104.)  As demonstrated in the record, the BIA determined the evidence Plaintiff submitted with his Petition did not immediately establish eligibility for the benefit he

1   sought; therefore, USCIS exercised its discretion to allow Plaintiff an additional opportunity to

2   establish eligibility.  This decision is under USCIS discretion; so, the BIA correctly interpreted

3   the statute did not require the agency to give Plaintiff a third opportunity to provide evidence.

4       Second, a similar logic applies to the BIA's determination that Plaintiff's reliance on 8

5   C.F.R. § 204.2(d)(2)(vi) was misplaced.  (ECF No. 16 at 105.)  Again, 8 C.F.R. § 204.2(d)(2)(vi)

6   states, "The director may require that a specific Blood Group Antigen Test be conducted of the

7   beneficiary and the beneficiary's father and mother.  In general, blood tests will be required only

8   after other forms of evidence have proven inconclusive."  The BIA correctly determined this

9   statute "shields a petitioner" from being required to provide DNA evidence; it does not, as

10  Plaintiff posits, require the director to provide an opportunity to submit DNA test results after the

11  director determines other evidence is inconclusive.

12      The plain language of the statute supports the BIA's determination.  For example, the

13  word "may" when used in a statute affords discretion to the entity it empowers.  *See e.g. Lopez v.*

14  *Davis*, 531 U.S. 230, 241 (2001) (discussing "the permissive 'may'" as a "grant of discretion")

15  ["Congress' use of the permissive 'may' in [the statute] contrasts with the legislators' use of a

16  mandatory 'shall' in the very same section"]; *Rastelli v. Warden, Metro. Corr. Ctr.*, 782 F.2d 17,

17  23 (2d Cir. 1986) ["The use of a permissive verb—'may review' instead of 'shall review'—

18  suggests a discretionary rather than mandatory review process"]).  Furthermore, the first sentence

19  of the statute authorizes the director to require blood tests; it does not state a petitioner "must" or

20  "shall" be allowed to submit DNA test results for consideration.  *See Lexecon Inc. v. Milberg*

21  *Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ["[T]he mandatory 'shall' . . . normally

22  creates an obligation impervious to . . . discretion"].  Finally, there is no indication the statute

23  requires the director to yield to a petitioner's desire to submit DNA test results or any other

24  evidence; in fact, such an interpretation would contradict and render void the statutory scheme

25  outlined in 8 C.F.R. § 204.2(d)(2)(i) authorizing the USCIS to deny a petition without further

26  requests for evidence.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) [It is "a cardinal

27  principle of statutory construction" that "a statute ought, upon the whole, to be so construed that,

28  if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant"]

1    *see also United States v. Menasche*, 348 U.S. 528, 538 (1955) (applying this canon of statutory

2    construction to the INA).

3           The second sentence serves as a "shield" in that it functions to limit the director's

4    discretion in when to require petitioners and their beneficiaries to submit to a blood test.  "Will"

5    is equivalent to "shall."  "Other forms" is not "*all* other forms."  And "proven inconclusive" is

6    undefined by the statute.  While the statute does not require all other potential evidence be proven

7    inconclusive, it requires at least some other evidence be proven inconclusive before the director is

8    legally authorized to require a petitioner and beneficiary provide DNA evidence to establish

9    eligibility.  Moreover, the type of DNA test that the statute authorizes, "Blood Group Antigen

10   Testing," is typically used to exclude a man from being a child's father[14] as the test results can

11   reliably show that a child does not have the same blood group antigens as their putative male

12   ancestor.  That said, this form of "shield" allows a petitioner to exhaust and provide other

13   documentation to substantiate their claims before potentially being completely excludable on a

14   biological level by the USCIS.

15          Accordingly, this Court finds the BIA did not abuse its discretion, or act arbitrarily and

16   capriciously, when it affirmed the USCIS decision because it correctly interpreted the plain

17   meaning of the governing statutes.

18                      **3.   The BIA's decision did not depart from settled policy.**

19          Plaintiff argues "USCIS departed from its well-settled policy of giving the U.S. citizen

20   petitioner the opportunity to present DNA evidence to establish a biological relationship after

21   other evidence proves inconclusive" and that "USCIS's departure from its well-settled policy

22   made its decision arbitrary and capricious."  (ECF No. 23 at 9.)  Defendants replied that

23   Plaintiff's argument lacks "any evidence of a long-standing agency policy from which the agency

24   departed."  (ECF No. 25 at 2.)  Further, "Plaintiff fails to identify any binding self-imposed limit

---

25   [14] "Although blood group studies cannot be used to prove paternity, they can provide unequivocal

26   evidence that a male is not the father of a particular child. Since the red cell antigens are inherited
     as dominant traits, a child cannot have a blood group antigen that is not present in one or both

27   parents. For example, if the child in question belongs to group A and both the mother and the
     putative father are group O, the man is excluded from paternity."  Britannica

28   www.britannica.com/science/blood-group/Paternity-testing (last visited March 7, 2023).

1  on USCIS's discretion to request DNA evidence." (*Id*. at 2-3.)  Defendants argue "Plaintiff

2  simply fails to acknowledge that the [RFE] provided him with the exact invitation,

3  unambiguously worded, that he claims he should have been afforded." (*Id*. at 3.)

4      Defendants are correct—the BIA did not depart from settled policy in affirming USCIS's

5  denial of Plaintiff's Petition.  As already discussed, the record demonstrates USCIS gave Plaintiff

6  an opportunity to submit DNA evidence after determining the initial evidence to be inconclusive;

7  the BIA correctly determined that USCIS acted in accordance with the relevant governing statute.

8  Plaintiff's argument creates a false distinction that treats the RFE as the first stage of the process

9  when it is actually the second.  Further, Plaintiff was not even entitled to receive an RFE in

10  response to his Petition—that was issued under the USCIS's discretion.  *See* 8 § 103.2(b)(8).

11      Accordingly, this Court finds the BIA did not abuse its discretion, or act arbitrarily and

12  capriciously, when it affirmed the USCIS decision because it correctly identified USCIS did,

13  under its discretion, provide Plaintiff an opportunity to provide DNA evidence.

14  **B.  Defendants did not Violate Plaintiff's Due Process Rights.**

15  **i.  Standard of Review**

16      Plaintiff argues the USCIS and the BIA violated his due process rights in its denial of his

17  Petition.  "We review de novo whether the BIA violated procedural due process in adjudicating

18  an I-130 petition (thereby acting 'not in accordance with law')." *Zerezghi v. United States*

19  *Citizenship & Immigr. Servs*., 955 F.3d 802, 807 (9th Cir. 2020); *see also Ramirez-Alejandre v.*

20  *Ashcroft*, 319 F.3d 365, 377 (9th Cir. 2003).

21  **ii.  Procedural Due Process**

22  **1.  Plaintiff holds a protected property interest in his Petition.**

23      Plaintiff holds a "protected property interest in the adjudication of the I-130 Petition."

24  (ECF No. 23 at 10-12.)  "The Due Process Clause of the Fifth Amendment provides that no

25  person shall 'be deprived of life, liberty, or property, without due process of law.'" *Ching v.*

26  *Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (*Ching*).  "When bringing a due process claim, a

27  plaintiff must demonstrate (1) a liberty or property interest protected by the Constitution and (2) a

28  lack of adequate procedural protections." *Naiker*, 352 F. Supp. 3d at 1072 (citations omitted); *see*

1   *Kerry v. Din*, 576 U.S. 86, 107 (2015) (J. Breyer, dissenting) (citing *Swarthout v. Cooke*, 562

2   U.S. 216, 219 (2011)).

3         In *Ching*, the Court determined the petitioners held a liberty interest in I-130 petitions for

4   immediate relative status because approval of the petition is nondiscretionary.  *Ching*, 725 F.3d

5   1149.  "'[A] benefit is not a protected entitlement if government officials may grant or deny it in

6   their discretion.'  Instead, '[a] reasonable expectation of entitlement is determined largely by the

7   language of the statute and the extent to which the entitlement is couched in mandatory terms.'"

8   *Id.* at 1155 (citations omitted).  "Where a petitioner [proves] his [claimed familial relationship]

9   meets the requirements for the approval of an I-130, he is entitled, as a matter of right, to the

10  approval of his petition."  *Id.*  The Court in *Ching* then reasoned that Section 204(b) of the INA,

11  codified at 8 U.S.C. § 1154(b), rendered the "decision of whether to approve an I-130 visa

12  petition" nondiscretionary because "determinations that 'require application of law to factual

13  determinations' are nondiscretionary."  *Id.*

14        Section 204(b) of the INA provides that "'[a]fter an investigation of the facts in each case

15  . . . the Attorney General shall, if he determines that the facts stated in the petition are true and

16  that the alien in behalf of whom the petition is made . . . is eligible for preference under

17  subsection (a) or (b) of section 1153 of this title, approve the petition . . . ."  8 U.S.C. § 1154(b).

18  Section 1153(b)(3) includes married sons and married daughters of U.S. citizens under the visa

19  preference allocation for family-sponsored immigrants.  Therefore, similarly to immediate

20  relative status, "'[family preference status] is a right to which citizen applicants are entitled as

21  long as the petitioner and [] beneficiary meet the statutory and regulatory requirements for

22  eligibility.  This protected interest is entitled to the protections of due process.'"  *Naiker*, 352 F.

23  Supp. 3d at 1074 (citing *Ching*, 725 F.3d at 1156).  Since Plaintiff's Petition concerns an I-130

24  Form on behalf of his married son, Harvinder, he has a protected interest in its adjudication.

25                    **2.  Due process requires a meaningful opportunity to be heard.**

26        Due process principles "require that a recipient have timely and adequate notice detailing

27  the reasons for a proposed termination, and an effective opportunity to defend . . . [t]hese rights

28  are important in cases . . . where recipients have challenged proposed terminations as resting on . .

1    . misapplication of rules or policies to the facts of particular cases." *Goldberg v. Kelly*, 397 U.S.

2    254, 267-68 (1970) (*Goldberg*).  Plaintiff concedes he received "adequate notice" but argues he

3    did not get a meaningful opportunity to be heard under USCIS's procedures.  (ECF No. 23 at 10.)

4    "'"[[T]]he fundamental requisite of due process of law is the opportunity to be heard.'"  The

5    hearing must be "'at a meaningful time and in a meaningful manner.'"'"  *Goldberg*, 397 U.S. at

6    267-68 (citations omitted).  Therefore, the Court has embraced a framework to evaluate the

7    sufficiency of procedures and generally considers three distinct "factors outlined in *Mathews v.*

8    *Eldrige* [424 U.S. 319 (1976) (*Mathews*)] when analyzing the adequacy of procedural protections:

9    (1) the private interest affected by the government's action; (2) 'the risk of erroneous deprivation'

10   of the affected interest under the procedures used; and (3) the government's interests."  *Naiker*,

11   352 F. Supp. 3d at 1074; *see also Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005).

12       **a.  Private interest**

13       Plaintiff argues he holds a private interest in the approval of the petition and that "a parent

14   has a constitutionally protected liberty interest in the companionship and society of his or her

15   child."  (ECF No. 23 at 11.)  "The extent to which procedural due process must be afforded the

16   recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,'

17   [citation], and depends upon whether the recipient's [private] interest in avoiding that loss

18   outweighs the governmental interest in summary adjudication."  *Goldberg*, 397 U.S. at 262-63.

19   "As *Goldberg* illustrates, the degree of potential deprivation that may be created by a particular

20   decision is a factor to be considered in assessing the validity of any administrative

21   decisionmaking process."  *Mathews*, 424 U.S. at 341.  Furthermore, "the possible length of

22   wrongful deprivation of . . . benefits (also) is an important factor in assessing the impact of

23   official action on the private interests."  *Id.*  However, "'the question of whether there is a

24   protected [private] interest in a benefit' is not the same as 'the question of eligibility for that

25   benefit.'"  *Naiker*, 352 F. Supp. 3d at 1074.  "[T]he decision maker's conclusion as to a

26   recipient's eligibility must rest solely on the legal rules and evidence adduced . . . [Citations.]  To

27   demonstrate compliance with this elementary requirement, the decision maker should state the

28   reasons for his determination and indicate the evidence he relied on [citation] . . ."  *Goldberg*, 397

1    U.S. at 271.

2           In other words, the question is whether Plaintiff is eligible for the approval of his Petition.

3    The decision maker, the USCIS, relied solely on statutory guidance and requirements in its RFE

4    to Plaintiff.  The USCIS decision stated that Plaintiff, however, failed to submit sufficient

5    documentary evidence showing that Harvinder was his "child," as that term is defined by the

6    governing statute.  Further, the BIA reviewed additional evidence on appeal, Plaintiff's marriage

7    certificate, and determined Plaintiff had still failed to submit sufficient documentary evidence of

8    eligibility.  The BIA determined that because Harvinder's birth certificate did not list his mother's

9    name there was no way to tell whether Harjeet was Harvinder's natural mother.  Relying solely

10   on the operative provisions of the INA, the USCIS and the BIA determined Plaintiff failed to

11   establish eligibility for family status preference.  Each agency stated clear reasons for its decision

12   and referred explicitly to the deficiencies in Plaintiff's submitted documentation.

13          The agency did not violate Plaintiff's rights under prong one of the *Mathews* test.

14          **b.  Risk of erroneous deprivation**

15          Plaintiff argues "there was a substantial risk of error in the procedure used by USCIS in

16   adjudicating the I-130 Petition."  (ECF No. 23 at 12.)  Plaintiff states that he wanted to submit the

17   DNA evidence, but he believed that he did not have sufficient time in which to submit such

18   evidence to USCIS.  (*Id.* at 11.)  Therefore, he should not have been penalized for his reasonable

19   efforts to comply with the RFE within the timeframe because, on such short notice, it was not

20   reasonable for USCIS to expect Plaintiff to provide DNA evidence.  (*Id.*)  Defendants argue

21   Plaintiff should be estopped from arguing this position:  "Plaintiff's re-framed due process

22   argument is completely divorced from both the factual allegations of his complaint (ECF [No.] 1)

23   and the administrative record (ECF [No.] 16).  [Plaintiff] claims in his opposition that he 'wanted

24   to submit the DNA evidence' and made 'reasonable efforts . . . within the [RFE] timeframe' to do

25   so.  (ECF [No.] 23[at] 10.)  But there is nothing in the complaint or the administrative record to

26   suggest that Plaintiff made any efforts—reasonable or otherwise—to ever initiate DNA testing."

27   (ECF No. 25 at 4-5.)  Defendants argue:  "[J]udicial estoppel applies to a party's stated position,

28   regardless of whether it is an expression of intention, a statement of fact, or a legal assertion.  The

1    integrity of the judicial process is threatened when a litigant is permitted to gain advantage by the

2    manipulative assertion of inconsistent positions, factual or legal." (*Id.* at 5.) According to

3    Defendants, Plaintiff's current argument contradicts his position before the BIA.

4          Defendants are correct. On appeal to the BIA, Plaintiff argued he should have been able

5    to wait for an evaluation of the evidence submitted in response to the RFE in order to avoid the

6    "expensive" and "cumbersome" DNA-testing process, that he "never specifically declined" the

7    option to present DNA evidence, and that he was "wait[ing] on the decision on the documents

8    before undertaking such expensive testing." (ECF No. 16 at 83-85, 150-52.) He also

9    acknowledges that he could have submitted evidence that he initiated the DNA testing process.

10   (*Id.*) In addition, in his motion to reconsider, Plaintiff again argued he was asserting on appeal

11   "that he should have been allowed to wait for [USCIS] to consider the evidence and then been

12   provided an opportunity to submit DNA testing 'after other forms of evidence have proven

13   inconclusive.'" (*Id.* at 13.) Now, Plaintiff argues that he did want to undergo and submit DNA

14   test results during the RFE timeframe but feared he would not have time. (ECF No. 23 at 12.)

15   Plaintiff, in this appeal, does not acknowledge he knew he could have submitted evidence he

16   initiated the process on appeal. (*Id.* at 10.)

17         Plaintiff's position in this appeal is fundamentally different than the position the BIA

18   relied on in its adjudication. Furthermore, it is clear in his arguments on appeal to the BIA that

19   Plaintiff did not plan to submit DNA evidence in response to the RFE. [15] Plaintiff's brief on

20   appeal also states that he knew he could have submitted evidence of *initiating* the DNA testing

21   process, not the results themselves. (ECF No. 16 at 150.) Although Plaintiff presents not to have

22   known what would constitute evidence of initiating the process (ECF No. 23 at 11), the

23   administrative record demonstrates that Plaintiff had an idea of what to submit and had the

24   capacity to do so within the timeframe allotted by USCIS: Plaintiff submitted evidence of

25   initiating the DNA test results process, correspondence with the testing lab, dated roughly two

26

27   [15] Plaintiff argues he was not required to demonstrate a bona fide parent-child relationship nor
     was he required to undergo DNA testing because he had submitted sufficient evidence to show
28   Harvinder was born in wedlock. (*Id.* at 144-47.)

weeks following the BIA denial of his appeal (ECF No. 16 at 154-56).  Thus, at most, it took two weeks to garner evidence that Plaintiff started the DNA testing process, well under the three-month threshold afforded by USCIS.  (*Id.*)[16]  Therefore, the Court instead considers only Plaintiff's arguments before the BIA.

In his motion for reconsideration to the BIA, Plaintiff argued he should have "been allowed to wait for the Service to consider the evidence and ***then*** been provided an opportunity to submit DNA testing 'after other forms of evidence have proven inconclusive.'"  (ECF No. 16 at 131.)  Further, in his brief appealing the USCIS decision, Plaintiff argued he "ha[d] a right to have [USCIS] first determine if other evidence is unsatisfactory before having to provide DNA evidence.  (*Id.* at 151.)  Plaintiff's arguments ignore that USCIS did consider evidence and then provide an opportunity to submit DNA evidence.  Plaintiff submitted evidence with his Petition, which USCIS reviewed and determined to be inconclusive.  The statute does not explicitly require USCIS to provide an opportunity after ALL evidence has been submitted.  "Due process does not, of course, require two hearings." *Goldberg*, 397 U.S. at 267.  Additionally, the "specter of questionable credibility and veracity [of the documents] is not present" (*Mathews*, 424 U.S. at 344), especially since the verified administrative record was submitted and was not objected to by Plaintiff.  Moreover, the USCIS and the BIA determined the issue was not the credibility of the documents Plaintiff submitted, but that he did not submit enough.

Further, written submissions were an adequate substitute for oral presentation in this instance because they provided an effective way for Plaintiff to communicate his case to the decisionmaker.  *See Mathews*, 424 U.S. at 345.  Although Plaintiff argues the USCIS violated his due process rights as a pro se petitioner by failing to give him reasonably specific instructions on how to respond to the RFE (ECF No. 1 at 8-9; ECF No. 16 at 132), the RFE was heavily detailed

---

[16] In the email correspondence attached to the administrative record, the Plaintiff writes his intention to submit the evidence he initiated the DNA process on appeal at the direction of his counsel, even though, in his brief on appeal, Plaintiff's counsel clearly states he understands that new evidence is not reviewed on appeal.  (ECF No. 16 at 154-56.)  The docket shows he initiated the process for DNA testing on May 28, 2019,—over a year after the RFE deadline in February 2018.  (*Id.* at 154-58.)  It shows here that they wanted to submit the DNA test results with the motion to reconsider, not the appeal which stated he had no intention of submitting results.

and "identifie[d] with particularity the information relevant to the entitlement decision."

*Mathews*, 424 U.S. at 345.  In fact, the provision of an RFE functions as "[a] further safeguard

against mistake" since it "allow[ed] [Plaintiff]'s representative full access to all information relied

upon by the state agency.  In addition, prior to the cutoff of benefits, the agency inform[ed]

[Plaintiff] of its tentative assessment, the reasons therefor, and provide[d] a summary of the

evidence that it considers most relevant.  Opportunity [wa]s then afforded the [Plaintiff] to submit

additional evidence or arguments, enabling him to challenge directly the accuracy of information

in his file as well as the correctness of the agency's tentative conclusions.  These procedures . . .

enable[d] [Plaintiff] to 'mold' his argument to respond to the precise issues which the

decisionmaker regards as crucial."  *Mathews*, 424 U.S. at 345-46.

Thus, the agency did not violate Plaintiff's rights under prong two of the *Mathews* test.

**c.  Government's interest**

Plaintiff argues that "providing Plaintiff with additional time in which to respond to [the]

RFE would not have greatly burdened the government.  Any fiscal and administrative burdens on

USCIS would have been slight as compared to Plaintiff's protected interest under the Due Process

Clause."  (ECF No. 23 at 12.)  Having judicially estopped Plaintiff from the arguments presented

in his opposition, the Court construes Plaintiff's statements to argue that remanding and

reopening his Petition to allow for the submission of DNA test results would not have

significantly burdened the government.  Defendants argue Plaintiff was given multiple

opportunities to submit supporting documents to the agency and conceded that "'[USCIS] has the

discretion to deny the petition outright' without issuing an RFE" and that "'to the Service's

credit,' [it] issued an RFE in his case."  (ECF No. 17 at 12, citing ECF No. 16 at 146.)

The issue is whether Plaintiff's interest in establishing eligibility for the family preference

status benefit outweighs the public interest, or USCIS and BIA interests.  "[B]oth [] authorities

and recipients have an interest in relatively speedy resolution of questions of eligibility, that they

are used to dealing with one another informally, and that some [] departments have very

burdensome caseloads.  These considerations justify the limitation of the pre-termination hearing

to minimum procedural safeguards, adapted to the particular characteristics of [] recipients, and to

the limited nature of the controversies to be resolved." *Goldberg*, 397 U.S. at 267.  The Court refrains from "imposing upon the States or the Federal Government . . . any procedural requirements beyond those demanded by rudimentary due process." *Goldberg*, 397 U.S. at 267.

The public interest includes "the administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right, an evidentiary hearing upon demand in all cases prior to the [denial of] benefits . . . [E]xperience with the constitutionalizing of government procedures suggests that the ultimate additional cost in terms of money and administrative burden would not be insubstantial." *Mathews*, 424 U.S. at 347.  At some point, "the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost. Significantly, the cost of protecting those whom the preliminary administrative process has identified as likely to be found undeserving may in the end come out of the pockets of the deserving" since available resources are not unlimited.  *Id*. at 348.

"The judicial model of an evidentiary hearing is [not] required . . . in all circumstances." *Id*.  Instead, "substantial weight must be given to the good-faith judgments of [administrators] that the procedures they have provided assure fair consideration of the entitlement claims of individuals." *Id*. at 349.  "This is especially so where, as here, the prescribed procedures not only provide the claimant with an effective process for asserting his claim prior to any administrative action, but also assure a right to an evidentiary hearing, as well as to subsequent judicial review, before the denial of his claim becomes final." *Id*.

Plaintiff's interest in this case does not outweigh the public interest.  The length of time that has spanned establishing eligibility in this case has been over 10 years long as of the date of this order, and the USCIS's California Service Center processing time for deciding I-130 Form petitions for married sons or married daughters is approximately 117 months, or nearly 10 years.[17]  The length in processing time differs based on the Service Center processing the request—the same petition takes 29 months in the Potomac Service Center.

---

[17] Information retrieved from egov.uscis.gov/processing-times/ (last accessed March 7, 2023).

In addition, Plaintiff seeks to submit evidence that will not assuage the concerns of the USCIS—DNA test results—when the true issue is whether Harvinder is Plaintiff's legitimate child.  Nothing in the RFE, nor its authorizing statute, indicates DNA test results are sufficient to establish eligibility.  In fact, the RFE states that DNA testing is "optional" and "voluntary" and indicates that even if a biological connection is present, Plaintiff would still be required to establish "more than a mere tie by blood."  (*Id.* at 184-85.)  Eligibility for this type of relationship does not only include genetics, but it also includes the legal and social status afforded a child born in wedlock.  Harvinder's birth certificate did not name his mother,[18] but Plaintiff does not seek to offer an amended birth certificate if his motion were remanded and reopened.  None of Plaintiff's secondary evidence named Harjeet, Plaintiff's wife, as Harvinder's mother, but Plaintiff does not seek to offer amended affidavits on remand.  There is no indication in the record submitted that Harjeet is the sister of Phumman Singh, as referred to by Ajmer's affidavit, but Plaintiff does not seek to offer that either.  Plaintiff did not submit and does not proffer evidence required to demonstrate that Harvinder was born to Harjeet Kaur while she was in wedlock with Plaintiff.

The USCIS and the BIA did not violate Plaintiff's due process rights under prong three of the *Mathews* test.  The government interest outweighs Plaintiff's interest in this instance.  Accordingly, the USCIS and the BIA did not violate Plaintiff's right to procedural due process in its denial and affirmance of the denial of Plaintiff's I-130 Petition.

///

///

---

[18] According to the marriage certificate reviewed on appeal (ECF No. 16 at 90), Plaintiff and Harjeet Kaur's marriage was valid under the Hindu Marriage Act of 1955.  *See* Hindu Marriage Act of 1955.  Children born to parents under the Hindu Marriage Act cannot be legitimated by any other process than being born during a valid, lawful marriage.  The Act states, "[a]ny child of the parties to a [valid] marriage . . . born of such marriage shall be deemed to be their legitimate child . . . "  The Registration Act of 1969 governs the registration of births and deaths and would apply to Harvinder as he was born in 1974.  This Act does not explicitly require the name of the mother to be on the birth certificate.  The Rajasthan Registration of Births and Death Rules Act was the next time the Registration Act was substantively amended.  It required the name of the mother on the birth certificate.  However, this Act was enacted in 1999 and effective in 2000, meaning it was not in effect when Plaintiff registered Harvinder's birth in 1993.  No law required the mother's name to be on the birth certificate.

**CONCLUSION**

The Court concludes that the BIA decision was not arbitrary or capricious, and that the USCIS's procedures did not violate Plaintiff's Fifth Amendment Due Process rights.

For the reasons explained above:

1.      Defendant's motion for summary judgment (ECF No. 17) is GRANTED; and

2.      The Clerk of the Court is directed to close this case and terminate all pending hearings for this case.

IT IS SO ORDERED.

Dated:    March 10, 2023    

_____
UNITED STATES DISTRICT JUDGE